UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EBONY A.,[1] | ) |
|        *Plaintiff,* | ) |
| v. | ) No. 1:22-cv-00542-JMS-MG |
| KILOLO KIJAKAZI, *Commissioner of the Social Security Administration,* | ) |
|        *Defendant.* | ) |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

On December 31, 2018, Plaintiff Ebony A. protectively filed her application for supplemental security income ("SSI") from the Social Security Administration ("SSA"). [Filing No. 7-15 at 3-11.] Her application was denied initially and upon reconsideration. [Filing No. 7-10 at 30-35.] A hearing was held before Administrative Law Judge Kevin Walker ("the ALJ") on July 22, 2021. [Filing No. 7-3 at 2-29.] On August 5, 2021, the ALJ issued a decision concluding that Ebony A. is not entitled to benefits. [Filing No. 7-2 at 21-31.] The Appeals Council denied review. [Filing No. 7-2 at 2-7.] Ebony A. timely filed this action on March 31, 2022, asking the Court to review the denial of benefits according to 42 U.S.C. § 1383(c)(3). [Filing No. 1.]

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

definition of 'disability' has two parts.  First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity.  Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.  The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence: (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.  *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[2]  "If a claimant satisfies steps one, two, and three, she will automatically

---

[2] The Code of Federal Regulations contains separate sections relating to disability insurance benefits ("DIB") and SSI that are identical in most respects relevant to this case.  For the sake of simplicity, this Entry generally contains citations to DIB sections only.

be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the [Commissioner] to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). However, courts have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings, and this power includes the ability to remand the case with instructions for the Commissioner to calculate and award benefits to the applicant. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.*

## II.
### BACKGROUND

Ebony A. was born in October of 1971, and was 49 years old as of the ALJ's August 5, 2021 decision. [*See* Filing No. 7-15 at 3.] The ALJ's decision was issued a little less than three months before Ebony A.'s 50th birthday. She alleged a disability onset date of February 16, 2018. [Filing No. 7-15 at 3.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ebony A. was not disabled. [Filing No. 7-2 at 21-31.] Specifically, the ALJ found as follows:

- At Step One, Ebony A. had engaged in substantial gainful activity[4] during the first two quarters of 2019, but had not engaged in substantial gainful activity since July 1, 2019. [Filing No. 7-2 at 23-24.]

- At Step Two, Ebony A. had the following severe impairments: hypertension, gout, and obesity. She also had the following non-severe impairments: rheumatoid arthritis, glaucoma, degenerative disc disease of the lumbar spine with neuropathy and radiculopathy at the L4 and L5 levels, chronic pain syndrome, bilateral carpal tunnel syndrome, type 2 diabetes, substance use disorder, depression, and anxiety. [Filing No. 7-2 at 24-26.]

- At Step Three, Ebony A. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 26.]

- After Step Three but before Step Four, Ebony A. had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except occasionally lift and carry 10 lbs, frequently lift and carry less than 10 lbs; push/pull unlimited except for the weights indicated. Stand or walk for up to 30 minutes at one time, up to 2 hours in an 8[-]hour . . . workday, sit for up to 6 hours in an 8-hour workday. Occasionally climbing of ramps or stairs; never climbing . . . ladders, ropes or scaffolds; occasionally balancing, stooping, and crouching,

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- but never kneeling or crawling. No exposure to concentrated wetness or to humidity, no exposure to slippery or uneven surfaces. No exposure to extreme heat, cold, or industrial vibrations. No exposure to unprotected heights or hazardous machinery. Occasional foot controls bilaterally.  Frequent reaching, handling, fingering, and feeling bilaterally. Use a Cane to ambulate." [Filing No. 7-2 at 26-27.]

- At Step Four, Ebony A. had no past relevant work.  [Filing No. 7-2 at 29.]

- At Step Five, the ALJ concluded that, although Ebony A. was on the borderline between being categorized as a younger individual (45-49 years old) and a person closely approaching advanced age (50-54 years old), it was appropriate to consider her in the lower age category.  [Filing No. 7-2 at 29-30.]  The ALJ further concluded, considering Ebony A.'s age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Ebony A. can perform, including "final inspector," order clerk, and "inspections, such as touch up screener."  [Filing No. 7-2 at 30-31.]

## III.
### Discussion

Ebony A. argues that the ALJ failed to address the borderline age situation and erred by mechanically applying the age categories within the Medical Vocational Guidelines ("the Grid Rules").  [Filing No. 9 at 6.]  Specifically, Ebony A. argues that because she was within six months of her 50th birthday on the date of the ALJ's decision, the ALJ was required to apply the relevant age categories non-mechanically and evaluate a variety of factors to determine which age category should apply.  [Filing No. 9 at 8-9.]  She contends that the ALJ's discussion of this issue failed to build a logical bridge from the evidence to the conclusion to apply the lower age category because it is unclear what evidence was considered in assessing vocational adversities relevant to the age category determination, and the "ALJ's bare assertion that he applied the age categories mechanically because there were no additional vocational adversities is inadequate." [Filing No. 9 at 9-10.]  She asserts that "the ALJ discussed how [Ebony A.] meets the other GRID requirements but does not think meeting the other GRID requirements is enough to

5

warrant using the higher age category," and "[t]he ALJ['s] analysis of the education level and past work is a smoke screen for his failure to provide any meaningful review of the additional vocational adversities." [Filing No. 9 at 10.] Ebony A. points out that, if she were considered in the closely approaching advanced age category, the Grid Rules would have directed a finding that she is disabled. [Filing No. 9 at 9-11.]

In response, the Commissioner argues that the ALJ reasonably applied Ebony A.'s chronological age, rather than the higher age category, and supported that finding with substantial evidence. [Filing No. 10 at 5.] Specifically, the Commissioner points out that the ALJ: (1) acknowledged that this case presents a borderline age situation because Ebony A. was within six months of her 50th birthday at the time of the decision; and (2) considered various factors—including age, education level, work experience, and RFC—to determine that Ebony A. did not show compelling additional evidence that would compromise her ability to adjust to other work. [Filing No. 10 at 6-10.] The Commissioner contends that Ebony A.'s argument that the ALJ's analysis was flawed is misplaced, noting that Ebony A. "provides little to no discussion of the four relevant factors and barely mentions the ALJ's analysis of these factors." [Filing No. 10 at 11.] In the Commissioner's view, the ALJ's decision is supported by "sufficient reasoning and substantial evidence," and remand is not required. [Filing No. 10 at 12-13.]

In reply, Ebony A. contends that the ALJ did not sufficiently support or explain his finding that her past "work activity provides some support, but not strong support for using the higher age category." [Filing No. 11 at 1.] She argues that she had no past relevant work and the ALJ did not identify the specific work she did at a substantial gainful level in early 2019, but to the extent that he considered her work cleaning hotel rooms, the ALJ "failed to build a logical bridge explaining how this unskilled job done for a brief period is not more vocationally

adverse." [Filing No. 11 at 2.] Ebony A. asks the Court to remand this case with instructions to award benefits or, in the alternative, remand the case with instructions that the ALJ "review this single issue to apply [the Grid Rules] non-mechanically and at minimum that [Ebony A.] has to be found disabled as of her 50th birthday." [Filing No. 11 at 2.]

The Grid Rules are "a series of tables broken into separate rules 'which classif[y] a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience.'" *Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)) (alteration original). When a claimant's vocational factors and RFC coincide with all of the criteria of a particular rule, the ALJ must "line up the claimant's RFC and vocational factors in the appropriate grid table, and the grid will direct a finding of disabled or not disabled." *Haynes*, 416 F.3d at 628; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a) ("Where the findings of fact made with respect to a particular individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."). However, "when a claimant does not precisely match the criteria set forth in the grids, the grids are not mandated," but the ALJ may use them as guidance. *Haynes*, 416 F.3d at 628-29; *see also* SSR 83-10, 1983 WL 31251, at *1 (1983) ("Where one or more of the criteria of a rule are not met, no decision is directed; instead, the rules are used, in conjunction with the definitions and discussions in the text of the regulations, as guidance for decisionmaking.").

Pursuant to Grid Rule 201.09, which applies to individuals limited to sedentary work, 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 201.00, an individual who is closely approaching advanced aged, whose education is "[l]imited or less," and whose previous work experience is "[u]nskilled or none" is disabled, 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 201.09 (Table No. 1). There is no

corresponding Grid Rule directing a finding of disability for a younger individual (age 45-49) who is limited to sedentary work with the same education and previous work experience designations. See 20 C.F.R. § Pt. 404, Subpt. P, App. 2 (Table No. 1).

Before applying any Grid Rules, the ALJ must determine the claimant's age category. Generally, the SSA uses the claimant's actual chronological age during the period of alleged disability, however, the SSA "will not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). "If [the claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the SSA] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." 20 C.F.R. § 404.1563(b).

The Seventh Circuit has not addressed borderline age situations in detail or specified what duty an ALJ has to articulate his consideration of an older age category, and other Courts of Appeal to have addressed these matters have reached various conclusions. *Ross v. Berryhill*, 385 F. Supp. 3d 767, 775 (W.D. Wis. 2019) (citing cases from the Third, Sixth, Eighth, Ninth, and Tenth Circuits). Other District Courts in this Circuit have interpreted this caselaw to require "some explanation of the [ALJ's] thought process with respect to applying an age category in a borderline case." *Id*. at 775-76; *see also, e.g.*, *Jackson v. Kijakazi*, 2022 WL 226009, at *3 (N.D. Ill. Jan. 26, 2022) ("The Seventh Circuit has not expressly addressed the issue, however, in this district, courts have held that the absence of a 'statement by the ALJ from which it can be determined that she even considered which category was the appropriate one in which to place the plaintiff ... alone requires remand,' as such an absence makes it 'impossible for there to be meaningful review of the age category determination.'") (citation omitted); *Terri S. v. Berryhill*,

8

2018 WL 6174201, at *2 (S.D. Ind. Nov. 6, 2018), *report and recommendation adopted sub nom. Stillions v. Berryhill*, 2018 WL 6171461 (S.D. Ind. Nov. 26, 2018) ("In borderline situations, ALJs must provide reasoning for their decisions regarding under which age category to analyze the claimant's ability to work."); *Pettinger v. Berryhill*, 2018 WL 4026291, at *7 (N.D. Ind. Aug. 23, 2018) ("An examination of the case law of other district courts within the Seventh Circuit shows that the courts have required ALJs to consider and *explain* their age category determinations in borderline age situations.") (emphasis original); *Moody v. Berryhill*, 245 F. Supp. 3d 1028, 1034 (C.D. Ill. 2017) ("The Court is persuaded by the logic of the Courts of Appeal for the Third and Tenth Circuits, as well as that of our sister district, the Northern District of Illinois, in finding that the ALJ must, at minimum, identify that there was a borderline age situation before determining which age category to use."); *Figueroa v. Astrue*, 848 F. Supp. 2d 894, 900 (N.D. Ill. 2012) ("[W]ithout some minimal explanation of how a choice has been made, it would seem difficult if not impossible for there to be meaningful review of the age category determination."). Regardless, "the Seventh Circuit has long required that an ALJ build a 'logical bridge' between the evidence and the ALJ's conclusion so that the claimant may be afforded meaningful review of the Commissioner's ultimate findings." *Figueroa*, 848 F. Supp. 2d at 900.

In addition, though not binding on this Court, the SSA provides some guidance on this issue in its Hearings, Appeals, and Litigation Manual ("HALLEX"). *See Gebauer v. Saul*, 801 F. App'x 404, 409 n.1 (7th Cir. 2020) (noting that HALLEX provisions "are not binding law independent of the governing statutes and regulations" and "[c]ircuits are split as to whether HALLEX is binding on ALJs," but courts should "expect at least an explanation if an ALJ departed from [HALLEX's] instructions in a material way"). The applicable section of

HALLEX provides that "ALJs will not use the higher age category automatically in a borderline age situation," but instead will "consider whether to use the higher age category after evaluating the overall impact of all the factors on the claimant's ability to adjust to doing other work (e.g., residual functional capacity combined with age, education, and work experience as explained in 20 CFR 404.1563, 416.963, and Part 404, Subpart P, Appendix 2)."  HALLEX § I-2-2-42(C) (available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html) (last accessed Dec. 16, 2022).  ALJs are directed to "take a 'sliding scale' approach when determining which age category to use," meaning that "[t]o support the use of the higher age category, the evidence must show that the factor(s) have a progressively more adverse impact on the claimant's ability to adjust to other work as the period between the claimant's actual age and attainment of the next higher age category lengthens."  *Id*. at § I-2-2-42(C)(3).  "The closer in time the claimant is to the next higher age category, the more disadvantageous the claimant's age."  *Id*. at § I-2-2-42(C)(1).

For further guidance, HALLEX directs ALJs to a specific provision of the SSA's Program Operations Manual System ("POMS").  The POMS is also not binding on this Court and "does not have the force and effect of law," although it may be persuasive.  *O'Donnell v. Saul*, 983 F.3d 950, 958 (7th Cir. 2020), *cert. denied sub nom. O'Donnell v. Kijakazi*, 142 S. Ct. 707 (2021) (internal quotations and citation omitted).  Regarding borderline age situations, the POMS directs ALJs to consider the claimant's RFC, age, education, and work experience.  *See* POMS DI 25015.006(A) (available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015006) (last accessed Dec. 16, 2022).  With respect to these factors, the POMS indicates, in relevant part, that: (1) "[e]ducation below the high school level may be vocationally disadvantageous"; (2) if the claimant's past relevant work category is "unskilled or none," the ALJ should "consider the factor more vocationally adverse if the claimant had no work history or a minimal unskilled

work history than if the claimant had a long continuous history of unskilled work"; and (3) "[i]f the claimant's RFC limitations adversely affect his or her (unskilled) occupational base, but do not substantially erode it, [the ALJ should] consider the limitations in the borderline age analysis." *See id*. Relatedly, the regulations note that younger persons aged 45-49 "are more limited in their ability to adjust to other work than persons who have not attained age 45," and for persons closely approaching advanced age, the SSA "will consider that [the claimant's] age along with a severe impairment(s) and limited work experience may seriously affect [his or her] ability to adjust to other work." 20 C.F.R. § 404.1563(c)-(d).

The parties do not dispute that this case involves a "borderline age" situation because Ebony A. was within six months of her 50th birthday on the date of the ALJ's decision. [*See* Filing No. 10 at 5 (Commissioner's brief stating that "[i]n this case, [Ebony A.'s] age on the date of the ALJ's decision presented a 'borderline age' situation").] With respect to the age category determination, the ALJ wrote:

> Although a borderline age situation exists because the claimant is within a few days to a few months of attaining the next higher age category and use of the higher age category would result in a finding of "disabled" instead of "not disabled", use of this age category is not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work.
>
> At the hearing, the claimant's representative requested a nonmechanical application of the Medical-Vocational Grid Rules. Generally, if a claimant is within a few days to a few months of reaching a higher age category and using the higher age category would result in a decision that the claimant is disabled, we will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case (20 CFR 416.963). The [SSA] generally considers "a few days to a few months to mean a period not to exceed six months" (HALLEX I-2-2-42). I decline to do so because although the claimant is within six months of the next higher age category as of the date of this decision, she has not shown compelling additional factors that would compromise her ability to adjust to other work. It is about three months from the claimant attaining the next higher age category, which is in the middle of the six-month borderline age period and in the middle of the "sliding scale" approach when determining which age category to use. The claimant does not have past relevant work, but she did work

>  at substantial gainful activity in early 2019, as discussed at finding 1, so work activity provides some support, but not strong support for using the higher age category. Education does not support using the higher age category here because any education level without direct entry to work would result in disabled at the next higher age category with sedentary exertional level and the claimant has a high school education level by GED. I have also considered the effect of the claimant's [RFC] limitations on the unskilled occupational job base and they provide some support to using the higher age category. Considering all of these factors and the lack of any other factors supporting the use of the higher age category, the record does not support using the higher age category. Therefore, it is inappropriate to apply the next higher age category.

[Filing No. 7-2 at 29-30.]

To the extent that Ebony A. contends that the ALJ failed to acknowledge the borderline age situation and instead mechanically applied the age categorizations, she is incorrect. As outlined above, the ALJ did acknowledge the existence of a borderline age situation and correctly recited the rule that such a situation requires considering other factors to determine whether it is appropriate to apply a higher age category. The problem, however, is that the ALJ failed to build a logical bridge from the evidence to his conclusion that applying a higher age category was not warranted in this case.

The ALJ appears to have nominally considered Ebony A.'s age, past relevant work, education, and RFC as directed by the regulations, HALLEX, and the POMS. But his analysis of those factors is conclusory, arguably confusing, and does not seem to support his ultimate conclusion. First, the ALJ noted that Ebony A's age was "about three months" shy of 50, placing her "in the middle of the 'sliding scale' approach when determining which age category to use." In the Commissioner's view, this statement by the ALJ means that "because [Ebony A.'s] age fell in the middle of this sliding scale up to a six-month maximum, the ALJ properly did not assign any particular significance to it one way or the other." [Filing No. 10 at 7.] But the fact that Ebony A.'s age was in the "middle" of the six-month period that makes this a borderline age

situation does not mean that her age is insignificant or meaningless, it just makes her age less of an adversity than an age closer to 50. And, because Ebony A. was less than three months away from her 50th birthday, she had crossed over the halfway point of the six-month period, which seems to suggest that her age weighs in favor of applying the higher age category. Regardless, the ALJ did not sufficiently articulate what significance he placed on Ebony A.'s age.

Regarding past relevant work, the ALJ found that Ebony A. had no past relevant work but "did work at substantial gainful activity in early 2019, as discussed in finding 1." [Filing No. 7-2 at 30.] This statement references the ALJ's earlier finding that Ebony A. had engaged in substantial gainful activity when she earned approximately $1,366 per month on average from January to June of 2019 while working at a hotel, but had not engaged in substantial gainful activity since July 1, 2019. [Filing No. 7-2 at 23.] The ALJ concluded that this "work activity provides some support, but not strong support for using the *higher* age category." [Filing No. 7-2 at 23 (emphasis added).] But it is not clear why that is the case. The Commissioner contends that this finding is reasonable because Ebony A.'s earnings "showed that she was capable of some work during the relevant period," although "the lack of past relevant work was vocationally adverse." [Filing No. 10.] But to the extent that Ebony A.'s work history was somehow less vocationally adverse because she had sustained some substantial gainful activity rather than none, it is not apparent how that would support applying the higher age category rather than the lower one.

With respect to education, the ALJ concluded that this factor "does not support using the higher age category here because any education level without direct entry to work would result in disabled at the next higher age category with sedentary exertional level and the claimant has a high school education level by GED." [Filing No. 7-2 at 30.] The Commissioner attempts to

justify this finding by speculating that what the ALJ meant by this sentence was that he was not considering Ebony A.'s education level as a factor relevant to the age category determination because he was attempting to avoid impermissible double weighing and Grid Rule 201.09 already accounts for "[l]imited or less" education.  [Filing No. 10 at 7-8.]  It is true that HALLEX warns that "ALJs must be careful not to double-weigh a factor if the medical-vocational rule for the higher age category already incorporates the factor.  For example, if the applicable medical-vocational rule for the higher age category already considers illiteracy . . . , then there would need to be factors other than illiteracy to justify application of the higher age category."  See HALLEX § I-2-2-42(C)(2).  But to the extent this is what the ALJ intended to convey, he did not successfully articulate that reasoning, and the Court cannot rely on the Commissioner's post hoc rationalization of the ALJ's sloppy sentence.  *See, e.g.*, *Phillips v. Astrue*, 413 F. App'x 878, 887 (7th Cir. 2010) ("[T]he government may not provide the missing justification for an ALJ's decision.").

      Finally, the ALJ stated that he "also considered the effect of [Ebony A.'s RFC] limitations on the unskilled occupational job base and they provide some support to using the higher age category."  [Filing No. 7-2 at 30.]  But he did not articulate what effect Ebony A.'s RFC had on the occupational base—*i.e.*, whether it was substantially eroded—or how that effect provides "some support" for applying the higher age category.  Similarly, the ALJ did not explain how his multiple findings of "some support" for applying the higher age category led to his conclusion to apply the lower age category.  In sum, the ALJ failed to build a logical bridge from the evidence to his conclusion, and remand is appropriate.

## IV.
### CONCLUSION

Based on the foregoing, the Court **REVERSES** the ALJ's decision denying Ebony A. benefits and **REMANDS** this matter for further proceedings consistent with this opinion, pursuant to 42 U.S.C. §§ 405(g) (sentence four) and 1383(c). Final judgment shall issue accordingly.

Date: 12/19/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**